IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| FLOYD R. NASH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:07-0094 |
| ) | |
| F. MARCIAS, FCI Gilmer ) | |
| UNICOR/Automotive Supervisor, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On February 13, 2007, Plaintiff, acting *pro se* and an inmate at FCI Beckley, filed his Complaint claiming entitlement to relief pursuant to Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] (Document No. 1.) Plaintiff names the following as Defendants: (1) Mr. Marcias, UNICOR/Automotive Supervisor; and (2) UNICOR FCI Gilmer.[2] (Id.) Plaintiff contends that Defendant Marcias violated his constitutional rights by filing a false and discriminatory incident report, and attempting "to put his life in jeopardy during and after his employment at FCI Gilmore UNICOR." (Id., p. 6 - 7.) Specifically, Plaintiff alleges as follows:

> On or about February 21, 2006, at appoximately 3:30 p.m., I reported to UNICOR p.m. shift to work. During the count process, it was made apparent that I was not on the UNICOR out count and was sent back to my assigned Unit by Mr. Marcias. After Mr. Marcias directed me to return to my assigned Unit for 3:30 p.m.

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] The undersigned notes that the UNICOR FCI Gilmer is not a "person" as required by *Bivens*.

>count, Mr. Marcias immediately thereafter wrote a false and untruthful incident report against me for an alleged "unexcused absence from work." This incident report was highly injurious and discriminatory for several reasons: (1) It was false; (2) I was sent to my assigned unit at approximately 3:45 p.m., and the unit count does not clear or inmates are not released from their cells until approximately 4:30 - 4:45 p.m. after the 3:30 p.m. count is completed; (3) The normal unwritten practice accepted by UNICOR staff was that, if you're not on the 3:30 p.m. UNICOR out count, you're not required to return for work; and (4) This is the normal practice for all evening inmate UNICOR employees.
>
>On or about March 6, 2006, upon returning to my UNICOR job after it was restored with loss of two (2) paygrades stemming from the false and untruthful incident report filed against me by Mr. Marcias, I encountered Mr. Marcias for the first time since February 23, 2006. However, during the March 6th encounter, Mr. Marcias approached me with his face frowned and gritting his teeth he stated to me that "you will not be here long if I have anything to do with it." Not knowing if Mr. Marcias inferred that my life will be shortened or my job assignment, I immediately took safety precautions and that same day notified staff of Mr. Marcias' threat, which fell on deaf ears. I then asked to be resigned from UNICOR to ensure my safety.
>
>Shortly after resigning that same week, I have received information from several UNICOR staff and inmates that Mr. Marcias had relayed to them that "no one can leave early anymore because Floyd Nash had written me up for letting people leave early." This was a blatant attempt by Mr. Marcias to provoke, influence, and/or encourage other inmates to threaten, injure or hurt me mentally or physically because so far inmates have been calling me a snitch for writing Mr. Marcias up and that they should f*** me up for stopping them from getting off early. In addition, I have been advised by two staff members to be very careful because I was being "targeted."

(Id.) Plaintiff requests the following relief: "(a) Return to job longevity and seniority; (b) Back pay from UNICOR between 2/21/06 and relief date; (c) Expungement of incident report; (d) Correct custody score; and (e) Investigation of Mr. Marcias' unlawful conduct."[3] (Id., p. 8.)

---

[3] Plaintiff attaches a copy of Administrative Remedy No. 406188 as an Exhibit. (Document Nos. 1-1 and 1-2.) In order to fully exhaust his administrative remedies, Plaintiff must file a BP-9 (request to Warden), BP-10 (request to Regional Director), and BP-11 (request to General Counsel). Based upon a review of the Exhibit, it appears that Plaintiff fully exhausted his claim for Incident Report No. 1436699 to be expunged from his record and that he be reinstated to his previous UNICOR employment position. On March 9, 2006, Plaintiff filed an administrative remedy request at the institutional level (Remedy ID 406188-F1) seeking that the incident report be expunged and that he be reinstated to his previous UNICOR employment status without loss of pay grade or seniority. (Document No. 1-1, p. 6.) On March 24, 2006, Warden Francis denied Plaintiff's request. (*Id.*, p.7.) Plaintiff timely appealed the denial at the institutional level to the Regional Office, where

By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).[4] (Document No. 2.) Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at . A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him or her to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

---

it was rejected on August 14, 2006. (Remedy ID 406188-R3). (*Id.*, pp. 9 - 11.) On September 20, 2006, Plaintiff appealed the rejection to the Office of General Counsel (Remedy ID 406188-A1). (Document No. 1-2, p. 2.) The appeal was rejected on September 27, 2006, for failure to be in proper form. (Document No. 1-1, p. 12.) Plaintiff resubmitted his appeal and the Office of General Counsel denied his appeal on December 18, 2006 (Remedy ID 406188-A2). (Document No. 1-2, p. 3.)

[4] By letter dated March 13, 2007, the Clerk of the Court notified Plaintiff that his Complaint had been received and requested that Plaintiff either pay the required $350 filing fee or complete and return the enclosed Application to Proceed Without Prepayment of Fees and Affidavit and Authorization to Release Institutional Account Information and to Pay Filing Fee. (Document No. 3.) Plaintiff, however, did not pay the required filing fee or complete and file the above forms.

**ANALYSIS**

The allegations stated in Plaintiff's Complaint asserting violations of his constitutional rights are cognizable under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[5] The United States Supreme Court has held that an inmate may name a federal

---

[5] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not

officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 171 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reingold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### 1.     **Plaintiff's Claims of Equal Protection / Discrimination.**

Plaintiff alleges that Defendant Marcias discriminated against him by filing an incident report against Plaintiff for an "unexcused absence from work." The relevant equal protection cases provide a basic three-step analysis to determine whether an inmate's right to equal protection has been violated. First, the inmate must produce evidence to show that he was treated differently than other similarly situated inmates. See Durso v. Rowe, 579 F.2d 1365, 1371 (7th Cir. 1978). Second, the inmate must show that he was intentionally singled out for harsher treatment. See Brandon v. District of Columbia Bd. of Parole (I), 734 F.2d 56, 60 (D.C. Cir. 1984); Stringer v. Rowe, 616 F.2d 993, 998 (7th Cir. 1980). Third, if the inmate was purposefully singled out, the analysis can take one of two paths. The first path is taken if the inmate can show that the prison's motivation in effecting its differential treatment implicates a suspect classification or a fundamental right. If this is established, the Court must strictly scrutinize the prison's actions. See O'Bar v. Pinion, 953 F.2d 74, 81-82. The prison must show that the classification is narrowly tailored to a compelling

---

automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id*.

5

governmental interest. Id. If the prison's reason for the differential treatment does not implicate a suspect class or a fundamental right, the analysis takes the second path. See Brandon (I), 734 F.2d at 60, Brandon v. District of Columbia Bd. of Parole (II), 823 F.2d 644, 650 (D.C. Cir. 1987). On this path, the differential treatment is subject only to rational basis review. See O'Bar, 953 F.2d at 81-82. A rational basis review requires that the government's decision to treat similarly situated individuals differently bear some rational relationship to a legitimate State purpose. See id. at 81; Brandon (I), 734 F.2d at 60; Brandon (II), 823 F.2d at 650.

Plaintiff states that Defendant Marcias filed an incident report against Plaintiff for an "unexcused absence from work" when Plaintiff failed to return to work following the 3:30 p.m. count. (Document No. 1, p. 6.) Plaintiff alleges that the incident report was false and discriminatory because "the normal unwritten practice accepted by UNICOR staff was that if you're not on the 3:30 p.m. UNCIOR out count, you're not required to return for work." (Id.) Plaintiff states that "this is the normal practice for all evening inmate UNICOR employees." (Id.) A review of the incident report, however, reveals that Defendant Marcias instructed Plaintiff to return to work after the count and Plaintiff failed to do so.[6] Plaintiff does not allege or suggest that other inmates were allowed to disobey instructions to return to work without receiving an incident report. Accordingly, Plaintiff has failed to allege that he was treated differently than any other similarly-situated inmate. He has

---

[6] Incident Report No. 1436699 stated as follows:

On February 21, 2006, at approximately 3:34 Inmate Nash Reg. 12079-007 was sent back to his cell and told to return after the 4:00 p.m. count because he was not on the out count. Inmate Nash was paged twice by Control to report to UNICOR. At 7:00 p.m., Inmate Nash had not yet returned to UNICOR. I called to Recreation and was told Nash had just completed playing in a basketball game.

(Document No. 1-1, p. 2.)

not shown that he was singled out for harsher treatment. Finally, Plaintiff has not alleged that the decision to file an incident report against him was based on any suspect classification. According, the undersigned finds that Plaintiff has failed to state a claim for denial of equal protection of the law.

    **2.**    **No Liberty Interest in UNICOR Placement.**

Next, Plaintiff appears to allege that his constitutional rights were violated when Defendant Marcias filed a false incident report resulting in Plaintiff's removal from the UNICOR Program.[7] (Document No. 1, pp. 6 - 7.) The Fifth Amendment protects against deprivations of life, liberty, or property by the federal government. See U.S. Const. amend. V. In order to prevail on a due process claim, a plaintiff must show that the government has interfered with a protected liberty or property interest and that the procedures that led to the deprivation were constitutionally sufficient. Thus, plaintiff must first demonstrate that he had a protected liberty interest. The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60

---

[7] Federal Prison Industries, Incorporated is a wholly-owned corporation of the United States Government that employs inmates in federal prisons. Federal Prison Industries is also know as "UNICOR."

L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

To the extent that Plaintiff alleges a liberty interest in placement in a UNICOR Program, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges is a matter clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship). Furthermore, it is well established that an inmate has no federal right to a job assignment. Woodworth v. United States, 44 Fed Appx. 112 (9th Cir. 2002)(finding that an inmate "has neither a liberty nor a property interest

in his prison job"); Grayson v. Federal Prison Industries Factory, 69 F.3d 536 (5th Cir. 1995)(stating that prisoners have no constitutionally protected liberty or property interest in their prison job assignment, nor a legitimate claim of entitlement to continuing UNICOR employment); James v. Quinlan, 866 F.2d 627, 629 - 31 (3rd Cir. 1989)(holding that "plaintiffs do not have a liberty interest in their Federal Prison Industries job assignment"); Johnson v. Knable, 862 F.2d 314 (4th Cir. 1988)(stating that "prison work assignments are matter within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate"); Garza v. Miller, 688 F.2d 480, 485 (7th Cir. 1982), cert. denied, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983)(finding that inmates have no federal statutory right to Prison Industry Employment); Jackson v. LaManna, 2007 WL 1862371 (D.S.C. March 23, 2007)(stating that "[a]ll inmate job assignments are subject to the institution's needs, and inmates do not have any fundamental constitutional right to any specific work assignment"); and Williams v. Farrior, 334 F.Supp.2d 898 (E.D.Va. Sept. 7, 2004)(finding that prisoner was not entitled to due process protection because he had no liberty or property interest in any prison job assignment or placement in any particular prison facility). Thus, Plaintiff has no liberty interest in placement in the UNICOR Program. Accordingly, Plaintiff's claim that Defendants violated his constitutional rights by removing him from UNICOR is without merit.[8]

---

[8] The undersigned further notes that prisoner disciplinary proceedings are not part of criminal prosecution. Thus, the full panoply of rights due a defendant in criminal proceedings do not apply in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)("there must be mutual accommodation between institutional needs and objective and the provisions of the Constitution"). Inmates, however, are entitled to the following procedural safeguards during disciplinary hearings: (1) advance written notice to the inmate of the claimed violation; (2) an opportunity for the inmate to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finders of the evidence relied on and the reasons for the disciplinary action. *Id.*, at 563 - 66. Disciplinary decisions satisfy the requirements of due process

**3.     Plaintiff's Claim of Eighth Amendment Violation.**

As a general matter, punishments prohibited under the Eighth Amendment include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the

---

when there is "some evidence" to support the decision by the fact finder. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the disciplinary decision. *Id.* First, the undersigned notes that Plaintiff does not allege he was denied any of the above procedural safeguards. Next, the undersigned finds that Plaintiff does not dispute that he failed to return to UNICOR following the count. (Document No. 1-1, pp. 2 - 3.) Plaintiff merely contends that he did not hear Mr. Marcias instruct him to return to work following count. (*Id.*, p. 2.) Plaintiff explains as follows: "I came to work, they sent me back to the unit. When I went to recreation, I heard the page for me. I asked recreation staff to call UNICOR, they did and informed me that I needed to go to UNICOR on the 7:30 move." (*Id.*, p. 3.) Accordingly, there was "some evidence" to support a finding that Plaintiff committed the offense as charged in the incident report.

Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.")

Plaintiff contends that Defendant Marcias violated his constitutional rights by (1) stating that "you will not be here long if I have anything to do with it," and (2) informing inmates that "no one can leave early anymore because Floyd Nash had written me up for letting people leave early."

11

Assuming Plaintiff's allegation as true, Plaintiff has failed to state a constitutional claim of failure to protect. In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk of serious harm. Plaintiff does not claim that he was assaulted because of Defendant Marcias' statement. Further, Plaintiff is no longer incarcerated at FCI Gilmer. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that Defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that Defendant Marcias knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendant Marcias' alleged reference to Plaintiff as a snitch. Plaintiff's claim that Defendant Marcias should be liable because he "attempted to put [Plaintiff's] life in danger" is insufficient. See Henslee v. Lewis, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); Langston v. Fleming, 38 F.3d 1213 (4th Cir. 1994)(*unpublished opinion*)(Prisoner failed to state a claim where he merely alleged that guards endangered his life by informing other inmates that he was charged with rape). Finally, the verbal harassment or abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the

Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted.[9]

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

---

[9] The undersigned further notes that it does not appear that Plaintiff fully exhausted his administrative remedies concerning his claims that Defendant Marcias verbally abused him and put his life in jeopardy.

<u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

ENTER: November 25, 2009.

R. Clarke VanDervort
United States Magistrate Judge